**Zachary Dablow, OSB No. 073723**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 485-4168
Email: zachary@dablowlaw.com

**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **JOSEPH JENKS**, an individual; **DAVID CLARK**, an individual; **JUDITH ANN CLARK**, an individual; and **TIMOTHY HAMBLIN**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**WEYERHAEUSER COMPANY**, a Washington corporation; **WEYERHAEUSER TIMBER HOLDINGS, INC.**, a Delaware corporation; and **WEYERHAEUSER NR COMPANY**, a Washington corporation,<br><br>Defendants. | **Case No.** 6:26-cv-01765-AP<br><br>**FIRST AMENDED COMPLAINT**<br><br>Jury trial demanded |

# FIRST AMENDED COMPLAINT

Plaintiffs allege as follows:

## INTRODUCTION

**1.** A landowner that knows its hillside is failing owes more than silence to the people below. For six years, Weyerhaeuser watched the clear-cut slope above the Siletz Highway slump, crack, and creep toward Plaintiffs' homes. It never investigated, never stabilized, never warned. The closest it came was November 2025, when its representatives asked the residents below to watch the hillside for it.

**2.** Weeks later, before dawn on December 12, 2025, the hillside collapsed, burying a thousand feet of state highway, destroying or ruining Plaintiffs' homes, and pushing mud, rock, and shattered houses into the Siletz River. This action seeks to hold Weyerhaeuser and two of its subsidiaries responsible—not for harvesting timber, but for watching a known hazard grow above their neighbors' homes for six years and doing nothing to stop it.

## PARTIES, JURISDICTION, AND VENUE

**3.** Plaintiffs Joseph Jenks, David Clark, Judith Ann Clark, and Timothy Hamblin are citizens of Oregon. Each Plaintiff owns real property located along Oregon Route 229, known as the Siletz Highway, near milepost 14 in Lincoln County, Oregon.

**4.** Defendant Weyerhaeuser Company ("Weyerhaeuser") is a Washington corporation with its principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104. Weyerhaeuser owns and manages timberland throughout western Oregon, directly and through subsidiaries, and its agents and employees manage the timberland at issue in this action.

**5.** Defendant Weyerhaeuser Timber Holdings, Inc. ("Timber Holdings") is a Delaware corporation with its principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104. Timber Holdings is a subsidiary of Weyerhaeuser

and has held record title to the timberland at issue since 2022. Its president is Weyerhaeuser's president and chief executive officer, and its secretary is Weyerhaeuser's general counsel and corporate secretary. The Oregon address it gives the State in its forest-practice filings, 900 SE Monmouth Cutoff Road in Dallas, is the address on the Weyerhaeuser business card that Weyerhaeuser's land use manager left with Plaintiffs' neighbors in November 2025. Timber Holdings acts through Weyerhaeuser's agents and employees.

**6.** Defendant Weyerhaeuser NR Company ("Weyerhaeuser NR") is a Washington corporation with its principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104. Weyerhaeuser NR is a subsidiary of Weyerhaeuser, and its president and secretary are the same two Weyerhaeuser officers. In Defendants' forest-practice filings with the State, Weyerhaeuser NR is the timber owner and the operator that harvests timber on the land Timber Holdings holds, and it uses the same Dallas, Oregon telephone number as Timber Holdings. Weyerhaeuser, Timber Holdings, and Weyerhaeuser NR are referred to together as "Defendants."

**7.** On February 19, 2016, Plum Creek Timber Company, Inc. merged into Weyerhaeuser, and Weyerhaeuser assumed its obligations and liabilities by operation of law. The affiliates of Plum Creek Timber Company, Inc., including Plum Creek Timberlands, L.P., became Weyerhaeuser subsidiaries in the merger. Plum Creek Timber Company, Inc. and its affiliates are referred to together as "Plum Creek," and Weyerhaeuser is Plum Creek's successor in interest. In 2017, Plum Creek Timberlands, L.P. conveyed the timberland at issue to Weyerhaeuser by special warranty deed. Weyerhaeuser held record title until 2022, when it conveyed the timberland to Timber Holdings by special warranty deed. Since February 2016, Weyerhaeuser has owned,

managed, and controlled the timberland at issue, directly or through a subsidiary, without interruption. Weyerhaeuser NR has been a Weyerhaeuser subsidiary since before the merger.

**8.** This Court has jurisdiction under 28 U.S.C. § 1332 (a) (1). Plaintiffs are citizens of Oregon, Weyerhaeuser and Weyerhaeuser NR are citizens of Washington, Timber Holdings is a citizen of Delaware and Washington, and the amount in controversy exceeds $75,000 for each Plaintiff, exclusive of interest and costs.

**9.** Venue is proper in this district under 28 U.S.C. § 1391 (b) (2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district and the property that is the subject of this action is situated in this district. Divisional venue lies in the Eugene Division because Plaintiffs' claims arose in Lincoln County.

## GENERAL ALLEGATIONS

**10.** The Siletz Highway runs along the Siletz River through rural Lincoln County. Near milepost 14, Plaintiffs' properties sit between the highway and the river, and each Plaintiff's home was there prior to December 12, 2025.

**11.** Directly across the highway from Plaintiffs' properties, a steep, forested hillside rises hundreds of feet above the road. Defendants own and work that hillside. Timber Holdings holds record title, Weyerhaeuser NR owns and harvests the timber, and Weyerhaeuser manages and controls it, and they use it, as Plum Creek did before them, for commercial timber production.

**12.** The hillside steepens as it approaches the highway. Soil and rock that move down the hillside have only one place to go: onto the highway and the properties below it, where Plaintiffs' homes stood.

**13.** Between approximately 2009 and 2011, Plum Creek clear-cut approximately one square mile of timber on the hillside, removing essentially every tree from the slope above Plaintiffs' properties.

**14.** As Weyerhaeuser has long known, clear-cutting a steep slope reduces the slope's stability. Tree roots mechanically reinforce hillside soils, and root strength decays in the years after harvest before replanted trees mature. A forest canopy also intercepts rainfall and draws water from the soil, so removing it raises groundwater levels and pore water pressure. For years after a clear-cut—and particularly during the five-to-fifteen-year window when old root systems have decayed and new ones remain immature—the harvested slope is markedly more prone to landsliding. These effects are well documented and well understood in the timber industry.

**15.** Weyerhaeuser took over the hillside in 2016, through the Plum Creek merger, with the clear-cut already on the ground and with knowledge of the harvest history of its own timberlands. From 2016 forward, Weyerhaeuser owned, managed, and controlled the hillside and continued to use it and the surrounding lands in its timber operations, directly and through Weyerhaeuser NR. The 2022 deed to Timber Holdings changed none of that. Weyerhaeuser's agents and employees continued to manage, inspect, and work the hillside, and Timber Holdings took title knowing what Weyerhaeuser knew about the hillside's condition.

**16.** By approximately 2019, the clear-cut slope was visibly failing. The hillside developed open indicators of active ground movement and incipient landsliding, including slumping and sagging of the slope face, scarps, tension cracks, and displaced and deformed ground. Around 2019, a smaller landslide occurred on the same slope, creating a visible sign that the slope was failing.

**17.** Those indicators were visible to any observer on the ground, and they are apparent in publicly available satellite imagery. Imagery captured on August 19, 2016 shows the replanted slope intact. Imagery captured on July 25, 2019 shows bare, displaced ground high on the slope, at the head of what became the December 12, 2025 landslide. Imagery captured on May 3, 2026 shows the full track of the slide, from the head of the failure high on the clear-cut to the highway and the river below. The slope began failing on Weyerhaeuser's watch, in public view, while Weyerhaeuser itself held title to the land.

**18.** Defendants' people were on and around the hillside the whole time. Weyerhaeuser notified the State of herbicide operations in the surrounding timberlands in 2018 and 2020, and Weyerhaeuser NR harvested timber on Timber Holdings' land in the area throughout. Timber Holdings notified fertilizer applications on the timberland around Plaintiffs' properties in 2024 and again for November 2025, the same weeks Weyerhaeuser's land use manager was canvassing the neighborhood. None of those operations included any investigation, monitoring, or stabilization of the failing slope.

**19.** Weyerhaeuser knew of the instability. Its agents and employees managed, inspected, and worked the hillside and the surrounding timberlands through its Western Timberlands business, working out of Dallas, Oregon. It maintained and used roads on and around the slope, and it reviews aerial imagery of its own lands in the course of managing them. Since the landslide, Weyerhaeuser, not Timber Holdings, has dealt with the State and with Plaintiffs about the hillside. The evidence available to Weyerhaeuser was not subtle. The ground above an occupied neighborhood and a state highway was moving:



Google Earth historical imagery, August 19, 2016.



Google Earth historical imagery, July 25, 2019.



Google Earth historical imagery, May 3, 2026.

**20.** The destabilized, moving slope above occupied homes and a state highway presented a serious hazard, and Defendants had a duty to respond to it. Defendants could have taken action to investigate and evaluate the instability with qualified professionals; monitor the slope's movement; stabilize, drain, or otherwise mitigate the hazard; adjust their own operations on and around the failing ground; notify the responsible public agencies; or at least warn the people living below.

**21.** But Defendants did none of that. From 2019 through December 12, 2025, more than six years, Defendants undertook no evaluation, no monitoring, no stabilization, no mitigation, no notification, and no warning.

**22.** In November 2025, just weeks before the landslide, Weyerhaeuser representatives, including a Weyerhaeuser land use manager, visited some of the residents along the highway. They asked the residents to keep an eye on the hillside and the creek and to call Weyerhaeuser if they noticed anything "unusual," and they left a Weyerhaeuser business card. They did not warn anyone that the slope above the residents' homes was failing, did not disclose what Weyerhaeuser knew about the hillside's condition, and did not tell anyone to prepare or to leave.

**23.** Heavy winter rain is a certainty in the Oregon Coast Range. Storms like those of December 2025 arrive every winter, and Defendants knew that each winter would load the failing slope with water and that a slope in its condition would fail. The rain did not create the hazard. It set off a failure six years in the making.

**24.** On December 12, 2025, the hillside failed in dramatic fashion. Ground movement began at approximately 3:00 a.m., and between approximately 4:00 and 5:00 a.m. the slope collapsed in a massive landslide originating on Weyerhaeuser's clear-cut hillside at least 200 feet above the highway.

**25.** The landslide buried and destroyed approximately 1,000 feet of the Siletz Highway between mileposts 14.2 and 15.1, crossed the highway, and drove mud, rock, trees, and other debris onto and across Plaintiffs' properties and into the Siletz River.

**26.** The landslide completely destroyed the homes of at least two of the Plaintiffs, burying or sweeping away the houses and the land beneath them, and it rendered each remaining Plaintiff's home uninhabitable and unsafe.

**27.** The landslide also severed the only road access to Plaintiffs' properties. The Siletz Highway remains closed, and the State expects that rebuilding it will take years. Even where a Plaintiff's house still stands, the property cannot safely be occupied or used.

**28.** The slide mass has not been stabilized. The slope continues to move and to shed material, debris from the landslide remains on Plaintiffs' properties, and continuing movement threatens further harm. Defendants have not removed the debris, stabilized the slope, or restored Plaintiffs' access. Instead, in February 2026, two months after the landslide, Timber Holdings and Weyerhaeuser NR notified the State of a 104-acre clearcut on the slopes immediately south of Plaintiffs' properties, within 100 feet of Jaybird Creek and the Siletz River. Some of the evacuated properties have since been burglarized and vandalized.

**29.** As a direct result of the landslide, Plaintiffs lost their homes, land, and personal property; lost the use and enjoyment of their properties; incurred and continue to incur displacement, housing, and related expenses; and suffered diminution in the value of what remains of their properties, including from the loss of access and the prospect that the highway will be rerouted across Plaintiffs' remaining land.

## FIRST CLAIM FOR RELIEF: NEGLIGENCE

**30.** Plaintiffs reallege and incorporate paragraphs 1 through 29.

**31.** Weyerhaeuser has possessed and controlled the hillside since 2016, and it held record title from 2017 until 2022. Since 2022, Timber Holdings has held record title, Weyerhaeuser NR has owned and harvested the timber, and Weyerhaeuser has continued to possess and control the hillside. From at least 2019 forward, Defendants knew, or in the exercise of reasonable care should have known, that the slope above Plaintiffs' homes was unstable and moving and that, unless investigated, monitored, and stabilized, it posed a foreseeable and unreasonable risk of catastrophic harm to the people and properties below, including Plaintiffs and their homes.

**32.** Defendants were negligent in one or more of the following particulars:

**a.** failing to inspect or investigate the stability of the slope after visible indicators of ground movement appeared by approximately 2019;

**b.** failing to retain or consult qualified geotechnical or engineering geology professionals to evaluate the hazard;

**c.** failing to monitor the slope for continuing movement by instrumentation, survey, imagery review, or any other means;

**d.** failing to stabilize or mitigate the hazard through drainage control, buttressing, revegetation, or other reasonable measures;

**e.** continuing their timber operations on and around the destabilized slope without assessing or mitigating the risk those operations posed in combination with the existing instability;

**f.** failing to notify the Oregon Department of Transportation, the Oregon Department of Forestry, Lincoln County, or any other responsible agency of the known instability above a state highway and occupied homes;

**g.** failing to warn Plaintiffs and the other residents below the slope of the danger at any time from 2019 through December 12, 2025; and

**h.** failing to warn Plaintiffs even in November 2025, when Weyerhaeuser's own representatives stood in Plaintiffs' neighborhood, asked the residents to watch the hillside, and said nothing about the danger.

**33.** It was reasonably foreseeable that the failing slope, left uninvestigated, unmonitored, unstabilized, and unwarned of, would collapse onto the highway and the homes below and would injure the people and property there. Defendants' conduct created an unreasonable risk of precisely the kind of harm that occurred.

**34.** As a direct, foreseeable, and proximate result of Defendants' negligence, the December 12, 2025 landslide destroyed or ruined Plaintiffs' properties and caused Plaintiffs economic damages, including the value of destroyed and damaged real and personal property; displacement and temporary housing expenses; loss of use and rental value; diminution in the value of Plaintiffs' remaining property from lost access and the threatened rerouting of the highway across it; and burglary and vandalism losses at the evacuated properties, all in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF: TRESPASS

**35.** Plaintiffs reallege and incorporate paragraphs 1 through 34.

**36.** As alleged above, Plaintiffs owned, possessed, and were entitled to exclusive possession of their properties.

**37.** The December 12, 2025 landslide drove mud, rock, trees, and other debris from Defendants' hillside onto and across Plaintiffs' properties, where much of it remains today. The invasion destroyed homes, buried land, and continues to interfere with Plaintiffs' possession and use of their properties.

**38.** Weyerhaeuser knew by 2019, and Timber Holdings and Weyerhaeuser NR knew through the same people, that the slope was unstable and moving, and all three knew or had reason to know that, absent investigation, stabilization, or other intervention, earth and debris from their land would enter the properties below, including Plaintiffs' properties. Defendants nonetheless allowed the worsening condition to persist. The resulting invasion of Plaintiffs' properties was intentional within the meaning of Oregon trespass law. Alternatively, it resulted from Defendants' negligence as alleged above.

**39.** The conduct giving rise to the invasion was not a forest practice or a mode of operating forestland. It was not a generally accepted method of anything; it was not reasonable or prudent; it did not comply with applicable laws, including Oregon's forest practice statutes and the rules governing operations on unstable and high landslide hazard locations; and it was not done in a reasonable and prudent manner.

**40.** Debris from Defendants' land remains on Plaintiffs' properties, and the slope continues to move and to shed material onto them. Defendants know that the debris remains and that the slope continues to move, and none of them has removed any of it or taken any step to keep the slope from shedding more. The trespass is continuing.

**41.** As a direct and proximate result of the trespass, Plaintiffs suffered the economic damages alleged above, and each Plaintiff suffered annoyance, discomfort, inconvenience, mental suffering, and emotional distress from the invasion, destruction, and continuing occupation of their homes and land, in amounts to be proven at trial.

## DEMAND FOR JURY TRIAL

Under Fed. R. Civ. P. 38 (b), Plaintiffs demand a trial by jury on all claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

**a.** For Plaintiffs' economic damages in amounts to be proven at trial;

**b.** For Plaintiffs' noneconomic damages in amounts to be proven at trial;

**c.** For Plaintiffs' costs and disbursements incurred in this action;

**d.** For prejudgment and postjudgment interest as allowed by law; and

**e.** For such other and further relief as the Court deems just and equitable.

Dated September 3, 2026.

*s/ Will Riddell*

**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Plaintiffs

**Zachary Dablow, OSB No. 073723**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 485-4168
Email: zachary@dablowlaw.com

**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**JOSEPH JENKS**, an individual; **DAVID CLARK**, an individual; **JUDITH ANN CLARK**, an individual; and **TIMOTHY HAMBLIN**, an individual,

Plaintiffs,

v.

**WEYERHAEUSER COMPANY**, a Washington ~~corporation,~~corporation; **WEYERHAEUSER TIMBER HOLDINGS, INC.**, a Delaware corporation; and **WEYERHAEUSER NR COMPANY**, a Washington corporation,

~~Defendant.~~Defendants.

**Case No.** 6:26-cv-01765-AP

**FIRST AMENDED COMPLAINT**

Jury trial demanded

# FIRST AMENDED COMPLAINT

Plaintiffs allege as follows:

## INTRODUCTION

**1.** A landowner that knows its hillside is failing owes more than silence to the people below. For six years, Weyerhaeuser watched the clear-cut slope above the Siletz Highway slump, crack, and creep toward Plaintiffs' homes. It never investigated, never stabilized, never warned. The closest it came was November 2025, when its representatives asked the residents below to watch the hillside for it.

**2.** Weeks later, before dawn on December 12, 2025, the hillside collapsed, burying a thousand feet of state highway, destroying or ruining Plaintiffs' homes, and pushing mud, rock, and shattered houses into the Siletz River. This action seeks to hold Weyerhaeuser and two of its subsidiaries responsible—not for harvesting timber, but for watching a known hazard grow above ~~its~~their neighbors' homes for six years and doing nothing to stop it.

## PARTIES, JURISDICTION, AND VENUE

**3.** Plaintiffs Joseph Jenks, David Clark, Judith Ann Clark, and Timothy Hamblin are citizens of Oregon. Each Plaintiff owns real property located along Oregon Route 229, known as the Siletz Highway, near milepost 14 in Lincoln County, Oregon.

**4.** Defendant Weyerhaeuser Company ("Weyerhaeuser") is a Washington corporation with its principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104. Weyerhaeuser owns and manages timberland throughout western Oregon, ~~including~~directly and through subsidiaries, and its agents and employees manage the timberland at issue in this action.

**5.** Defendant Weyerhaeuser Timber Holdings, Inc. ("Timber Holdings") is a Delaware corporation with its principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104. Timber Holdings is a subsidiary of Weyerhaeuser and has held record title to the timberland at issue since 2022. Its president is Weyerhaeuser's president and chief executive officer, and its secretary is Weyerhaeuser's general counsel and corporate secretary. The Oregon address it gives the State in its forest-practice filings, 900 SE Monmouth Cutoff Road in Dallas, is the address on the Weyerhaeuser business card that Weyerhaeuser's land use manager left with Plaintiffs' neighbors in November 2025. Timber Holdings acts through Weyerhaeuser's agents and employees.

**6.** Defendant Weyerhaeuser NR Company ("Weyerhaeuser NR") is a Washington corporation with its principal place of business at 220 Occidental Avenue South, Seattle, Washington 98104. Weyerhaeuser NR is a subsidiary of Weyerhaeuser, and its president and secretary are the same two Weyerhaeuser officers. In Defendants' forest-practice filings with the State, Weyerhaeuser NR is the timber owner and the operator that harvests timber on the land Timber Holdings holds, and it uses the same Dallas, Oregon telephone number as Timber Holdings. Weyerhaeuser, Timber Holdings, and Weyerhaeuser NR are referred to together as "Defendants."

**~~5.~~7.** ~~In February 2016, Plum Creek Timber Company, Inc. merged into Weyerhaeuser. By operation of law, Weyerhaeuser assumed the obligations and liabilities of Plum Creek Timber Company, Inc. and its affiliates, including Plum Creek Timberlands, L.P. (collectively, "Plum Creek"). Weyerhaeuser is Plum Creek's successor in interest and has owned the timberland at issue ever since.~~On February 19, 2016, Plum Creek Timber Company, Inc. merged into Weyerhaeuser, and Weyerhaeuser assumed its obligations

and liabilities by operation of law. The affiliates of Plum Creek Timber Company, Inc., including Plum Creek Timberlands, L.P., became Weyerhaeuser subsidiaries in the merger. Plum Creek Timber Company, Inc. and its affiliates are referred to together as "Plum Creek," and Weyerhaeuser is Plum Creek's successor in interest. In 2017, Plum Creek Timberlands, L.P. conveyed the timberland at issue to Weyerhaeuser by special warranty deed. Weyerhaeuser held record title until 2022, when it conveyed the timberland to Timber Holdings by special warranty deed. Since February 2016, Weyerhaeuser has owned, managed, and controlled the timberland at issue, directly or through a subsidiary, without interruption. Weyerhaeuser NR has been a Weyerhaeuser subsidiary since before the merger.

~~6.~~**8.** This Court has jurisdiction under 28 U.S.C. § 1332 (a) (1). Plaintiffs are citizens of Oregon, Weyerhaeuser and Weyerhaeuser NR are citizens of Washington, Timber Holdings is a citizen of Delaware and Washington, and the amount in controversy exceeds $75,000 for each Plaintiff, exclusive of interest and costs.

~~7.~~**9.** Venue is proper in this district under 28 U.S.C. § 1391 (b) (2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district and the property that is the subject of this action is situated in this district. Divisional venue lies in the Eugene Division because Plaintiffs' claims arose in Lincoln County.

## GENERAL ALLEGATIONS

~~8.~~**10.** The Siletz Highway runs along the Siletz River through rural Lincoln County. Near milepost 14, Plaintiffs' properties sit between the highway and the river, and each Plaintiff's home was there prior to December 12, 2025.

~~9.~~**11.** Directly across the highway from Plaintiffs' properties, a steep, forested hillside rises hundreds of feet above the road. Defendants own and work that hillside. Timber

Holdings holds record title, Weyerhaeuser NR owns ~~that~~and ~~hillside~~harvests the timber, and ~~uses~~Weyerhaeuser manages and controls it, and they use it, as Plum Creek did before ~~it,~~them, for commercial timber production.

~~10.~~12. The hillside steepens as it approaches the highway. Soil and rock that move down the hillside have only one place to go: onto the highway and the properties below it, where Plaintiffs' homes stood.

~~11.~~13. Between approximately 2009 and 2011, Plum Creek clear-cut approximately one square mile of timber on the hillside, removing essentially every tree from the slope above Plaintiffs' properties.

~~12.~~14. As Weyerhaeuser has long known, clear-cutting a steep slope reduces the slope's stability. Tree roots mechanically reinforce hillside soils, and root strength decays in the years after harvest before replanted trees mature. A forest canopy also intercepts rainfall and draws water from the soil, so removing it raises groundwater levels and pore water pressure. For years after a clear-cut—and particularly during the five-to-fifteen-year window when old root systems have decayed and new ones remain immature—the harvested slope is markedly more prone to landsliding. These effects are well documented and well understood in the timber industry.

~~13.~~15. Weyerhaeuser ~~acquired~~took over the hillside in ~~2016~~2016, through the Plum Creek merger, with the clear-cut already on the ground and with knowledge of the harvest history of its own timberlands. From 2016 forward, Weyerhaeuser owned, managed, and controlled the hillside and continued to use it and the surrounding lands in its timber ~~operations.~~operations, directly and through Weyerhaeuser NR. The 2022 deed to Timber Holdings changed none of that. Weyerhaeuser's agents and employees

continued to manage, inspect, and work the hillside, and Timber Holdings took title knowing what Weyerhaeuser knew about the hillside's condition.

~~14.~~16. By approximately 2019, the clear-cut slope was visibly failing. The hillside developed open indicators of active ground movement and incipient landsliding, including slumping and sagging of the slope face, scarps, tension cracks, and displaced and deformed ground. Around 2019, a smaller landslide occurred on the same slope, creating a visible sign that the slope was failing.

~~15.~~17. Those indicators were visible to any observer on the ground, and they are apparent in publicly available satellite imagery. Imagery captured on August 19, 2016 shows the replanted slope intact. Imagery captured on July 25, 2019 shows bare, displaced ground high on the slope, at the head of what became the December 12, 2025 landslide. Imagery captured on May 3, 2026 shows the full track of the slide, from the head of the failure high on the clear-cut to the highway and the river below. The slope began failing on Weyerhaeuser's watch, in public ~~view.~~view, while Weyerhaeuser itself held title to the land.

**18.** Defendants' people were on and around the hillside the whole time. Weyerhaeuser notified the State of herbicide operations in the surrounding timberlands in 2018 and 2020, and Weyerhaeuser NR harvested timber on Timber Holdings' land in the area throughout. Timber Holdings notified fertilizer applications on the timberland around Plaintiffs' properties in 2024 and again for November 2025, the same weeks Weyerhaeuser's land use manager was canvassing the neighborhood. None of those operations included any investigation, monitoring, or stabilization of the failing slope.

~~16.~~19. Weyerhaeuser knew of the instability. Its ~~personnel~~agents and employees managed, inspected, and worked the hillside and the surrounding

~~timberlands.~~timberlands through its Western Timberlands business, working out of Dallas, Oregon. It maintained and used roads on and around the slope, and it reviews aerial imagery of its own lands in the course of managing them. Since the landslide, Weyerhaeuser, not Timber Holdings, has dealt with the State and with Plaintiffs about the hillside. The evidence available to Weyerhaeuser was not subtle. The ground above an occupied neighborhood and a state highway was moving:




Google Earth historical imagery, August 19, 2016.




Google Earth historical imagery, July 25, 2019.




Google Earth historical imagery, May 3, 2026.

~~17.~~20. The destabilized, moving slope above occupied homes and a state highway presented a serious hazard, and ~~Weyerhaeuser~~Defendants had a duty to respond to it. ~~Weyerhaeuser~~Defendants could have taken action to investigate and evaluate the instability with qualified professionals; monitor the slope's movement; stabilize, drain, or otherwise mitigate the hazard; adjust ~~its~~their own operations on and around the failing ground; notify the responsible public agencies; or at least warn the people living below.

~~18.~~21. But ~~Weyerhaeuser~~Defendants did none of that. From 2019 through December 12, 2025, more than six years, ~~Weyerhaeuser~~Defendants undertook no evaluation, no monitoring, no stabilization, no mitigation, no notification, and no warning.

~~19.~~22. In November 2025, just weeks before the landslide, Weyerhaeuser representatives, including a Weyerhaeuser land use manager, visited some of the residents along the highway. They asked the residents to keep an eye on the hillside and the creek and to call Weyerhaeuser if they noticed anything "unusual," and they left a Weyerhaeuser business card. They did not warn anyone that the slope above the residents' homes was failing, did not disclose what Weyerhaeuser knew about the hillside's condition, and did not tell anyone to prepare or to leave.

23. Heavy winter rain is a certainty in the Oregon Coast Range. Storms like those of December 2025 arrive every winter, and Defendants knew that each winter would load the failing slope with water and that a slope in its condition would fail. The rain did not create the hazard. It set off a failure six years in the making.

~~20.~~24. On December 12, 2025, the hillside failed in dramatic fashion. Ground movement began at approximately 3:00 a.m., and between approximately 4:00 and

5:00 a.m. the slope collapsed in a massive landslide originating on Weyerhaeuser's clear-cut hillside at least 200 feet above the highway.

~~21.~~25. The landslide buried and destroyed approximately 1,000 feet of the Siletz Highway between mileposts 14.2 and 15.1, crossed the highway, and drove mud, rock, trees, and other debris onto and across Plaintiffs' properties and into the Siletz River.

~~22.~~26. The landslide completely destroyed the homes of at least two of the Plaintiffs, burying or sweeping away the houses and the land beneath them, and it rendered each remaining Plaintiff's home uninhabitable and unsafe.

~~23.~~27. The landslide also severed the only road access to Plaintiffs' properties. The Siletz Highway remains closed, and the State expects that rebuilding it will take years. Even where a Plaintiff's house still stands, the property cannot safely be occupied or used.

~~24.~~28. The slide mass has not been stabilized. The slope continues to move and to shed material, debris from the landslide remains on Plaintiffs' properties, and continuing movement threatens further harm. ~~Weyerhaeuser~~Defendants ~~has~~have not removed the debris, stabilized the slope, or restored Plaintiffs' access. Instead, in February 2026, two months after the landslide, Timber Holdings and Weyerhaeuser NR notified the State of a 104-acre clearcut on the slopes immediately south of Plaintiffs' properties, within 100 feet of Jaybird Creek and the Siletz River. Some of the evacuated properties have since been burglarized and vandalized.

~~25.~~29. As a direct result of the landslide, Plaintiffs lost their homes, land, and personal property; lost the use and enjoyment of their properties; incurred and continue to incur displacement, housing, and related expenses; and suffered diminution in the

value of what remains of their properties, including from the loss of access and the prospect that the highway will be rerouted across Plaintiffs' remaining land.

**FIRST CLAIM FOR RELIEF: NEGLIGENCE**

**30.** Plaintiffs reallege and incorporate paragraphs 1 through 29.

**~~26.~~31.** ~~From 2016 forward,~~ Weyerhaeuser ~~owned,~~has ~~possessed,~~possessed and controlled the hillside since 2016, and it held record title from 2017 until 2022. Since 2022, Timber Holdings has held record title, Weyerhaeuser NR has owned and harvested the timber, and Weyerhaeuser has continued to possess and control the hillside. From at least 2019 forward, ~~Weyerhaeuser~~Defendants knew, or in the exercise of reasonable care should have known, that the slope above Plaintiffs' homes was unstable and moving and that, unless investigated, monitored, and stabilized, it posed a foreseeable and unreasonable risk of catastrophic harm to the people and properties below, including Plaintiffs and their homes.

**~~27.~~32.** ~~Weyerhaeuser~~Defendants ~~was~~were negligent in one or more of the following particulars:

**a.** failing to inspect or investigate the stability of the slope after visible indicators of ground movement appeared by approximately 2019;

**b.** failing to retain or consult qualified geotechnical or engineering geology professionals to evaluate the hazard;

**c.** failing to monitor the slope for continuing movement by instrumentation, survey, imagery review, or any other means;

**d.** failing to stabilize or mitigate the hazard through drainage control, buttressing, revegetation, or other reasonable measures;

**e.** continuing ~~its~~their timber operations on and around the destabilized slope without assessing or mitigating the risk those operations posed in combination with the existing instability;

**f.** failing to notify the Oregon Department of Transportation, the Oregon Department of Forestry, Lincoln County, or any other responsible agency of the known instability above a state highway and occupied homes;

**g.** failing to warn Plaintiffs and the other residents below the slope of the danger at any time from 2019 through December 12, 2025; and

**h.** failing to warn Plaintiffs even in November 2025, when Weyerhaeuser's own representatives stood in Plaintiffs' neighborhood, asked the residents to watch the hillside, and said nothing about the danger.

**~~28.~~33.** It was reasonably foreseeable that the failing slope, left uninvestigated, unmonitored, unstabilized, and unwarned of, would collapse onto the highway and the homes below and would injure the people and property there. ~~Weyerhaeuser's~~Defendants' conduct created an unreasonable risk of precisely the kind of harm that occurred.

**~~29.~~34.** As a direct, foreseeable, and proximate result of ~~Weyerhaeuser's~~Defendants' negligence, the December 12, 2025 landslide destroyed or ruined Plaintiffs' properties and caused Plaintiffs economic damages, including the value of destroyed and damaged real and personal property; displacement and temporary housing expenses; loss of use and rental value; diminution in the value of Plaintiffs' remaining property from lost access and the threatened rerouting of the highway across it; and burglary and vandalism losses at the evacuated properties, all in amounts to be proven at trial.

**SECOND CLAIM FOR RELIEF: TRESPASS**

35. Plaintiffs reallege and incorporate paragraphs 1 through 34.

~~30.~~36. As alleged above, Plaintiffs owned, possessed, and were entitled to exclusive possession of their properties.

~~31.~~37. The December 12, 2025 landslide drove mud, rock, trees, and other debris from ~~Weyerhaeuser's~~Defendants' hillside onto and across Plaintiffs' properties, where much of it remains today. The invasion destroyed homes, buried land, and continues to interfere with Plaintiffs' possession and use of their properties.

~~32.~~38. Weyerhaeuser knew by ~~2019~~2019, and Timber Holdings and Weyerhaeuser NR knew through the same people, that ~~its~~the slope was unstable and moving, and ~~it~~all three knew or had reason to know that, absent investigation, stabilization, or other intervention, earth and debris from ~~its~~their land would enter the properties below, including Plaintiffs' properties. ~~Weyerhaeuser~~Defendants nonetheless allowed the worsening condition to persist. The resulting invasion of Plaintiffs' properties was intentional within the meaning of Oregon trespass law. Alternatively, it resulted from ~~Weyerhaeuser's~~Defendants' negligence as alleged above.

~~33.~~39. The conduct giving rise to the invasion was not a forest practice or a mode of operating forestland. It was not a generally accepted method of anything; it was not reasonable or prudent; it did not comply with applicable laws, including Oregon's forest practice statutes and the rules governing operations on unstable and high landslide hazard locations; and it was not done in a reasonable and prudent manner.

~~34.~~40. ~~Debris from Weyerhaeuser's land remains on Plaintiffs' properties, and the slope continues to move and to shed material onto them. The trespass is continuing.~~Debris from Defendants' land remains on Plaintiffs' properties, and the slope

<u>continues to move and to shed material onto them. Defendants know that the debris remains and that the slope continues to move, and none of them has removed any of it or taken any step to keep the slope from shedding more. The trespass is continuing.</u>

**~~35.~~<u>41.</u>** As a direct and proximate result of the trespass, Plaintiffs suffered the economic damages alleged above, and each Plaintiff suffered annoyance, discomfort, inconvenience, mental suffering, and emotional distress from the invasion, destruction, and continuing occupation of their homes and land, in amounts to be proven at trial.

**DEMAND FOR JURY TRIAL**

Under Fed. R. Civ. P. 38 (b), Plaintiffs demand a trial by jury on all claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against ~~Defendant~~<u>Defendants</u> as follows:

**a.** For Plaintiffs' economic damages in amounts to be proven at trial;

**b.** For Plaintiffs' noneconomic damages in amounts to be proven at trial;

**c.** For Plaintiffs' costs and disbursements incurred in this action;

**d.** For prejudgment and postjudgment interest as allowed by law; and

**e.** For such other and further relief as the Court deems just and equitable.

Dated ~~August~~<u>September</u> ~~24,~~<u>___,</u> 2026.

*s/ Will Riddell*
**Will Riddell, OSB No. 195635**
1491 Commercial Street SE
Salem, Oregon 97302
Phone: (503) 269-8961
Email: will@riddell.lawyer
Attorney for Plaintiffs